Associated Builders and Contractors versus GSA, Mr. Baskin.  Thank you, Your Honor. Good morning. My name is Maurice Baskin on behalf of Associated Builders and Contractors, both nationally as well as the Florida First Coast Chapter. I'm going to begin with the court's question that the court asked earlier this week. I appreciate your letting us know in advance what that was going to be. But I did want to just give you a one-sentence summary of what the case is about, both for the audience, but also it goes to the question. There may be some people in the audience who are going to help us decide the case, but I don't think there's anybody in the audience who will decide it. The bottom line is we are seeking a preliminary injunction against prospective enforcement of an unlawful project labor agreement mandate implemented by the Biden administration for federal construction contracts exceeding $35 million. Your question . . . And continued by the current administration, and my concern is, does that belong in the district court? At least all the statutory claims . . . Correct. That is your question. It appears to me that it may very well belong in the court of federal claims. And so that's right up there, jurisdiction. Always a good idea to assess it first, though I note that the Department of Justice did not raise this issue. As you well know, we can raise that. We have an obligation to raise that on our own. So you can raise it at any time. And I would add that the court of federal claims itself has held that they do not have exclusive jurisdiction, and I want to give you some reasons why we strongly believe you do have jurisdiction of this case. You do have it because we are not challenging any specific procurement or proposed procurement here. We are challenging the executive order itself and the related regulations. So we are limited to challenging future procurements. And if you read the plain language . . . The question is, are your associations interested parties alleging statutory violations in connection with a procurement or a proposed procurement, right? Catch those words, a procurement or a proposed procurement. Not a future procurement is not mentioned there. And that is the basis on which the court of federal claims . . . I just want to go one at a time through the statute. Well, interested party . . . Go ahead. I think that is debatable as to what. It is an interested party as to what. We keep coming back to . . . I mean, you maintain in affidavits that your members would participate in the bidding process on multiple projects. Yes, in the future. Right. But for the executive order and the accompanying regulations, right? Correct. So, at least as an interested . . . you would at least be an interested party, right? Yes. Right. So, let's talk about in connection with procurement or a proposed procurement. Federal circuits define that term as used in the Tucker Act to include all stages of the process of acquiring property or services beginning with the process of determining a need for property or services and ending with contract completion and closeout. And the same federal circuit . . . Yes. . . . has held that to challenge a policy like we are doing, the only remedy is to go to district court where that challenge should be made under the . . . I think you had said it accurately a little earlier, which is that the court of federal claims has said that. The federal circuit, with respect to this executive order, I'm not sure they're right about that. Well, we believe they are. It could be concurrent jurisdiction, that's the only way it could be fudged. But I want to correct one thing, it's the federal circuit that said in the Landshark case, cited in the court of federal claims case, the MVL case, also cited in the Boeing case and the Landshark says, could not be more direct. Challenges to the validity of a regulation governing a procurement must be brought in the federal district court under the Administrative Procedure Act. And it's on that basis that the federal circuit, again, not the court of federal claims, in Boeing . . . Rationale for that, it appears no, not to have survived the amendments to the Tucker Act that Congress made in 1996. This Landshark is a post-Tucker Act decision, Boeing certainly is, and Boeing cited it, and so did the COFC judge. And I think we can amplify this looking at the four cases that the court cited in the asking the question. It said two that said what you just have been questioning, namely that there should not be any exclusive jurisdiction in the claims court. But in each case, there was a pending protest, a dispute, pending over proposed award in the Escentric case and in the Vetro case, which was the case of this court, suit to reverse a decision already made by the Air Force to terminate a contract. In other words, these were pending existing claims. Similar to the bid protests, we are not relitigating the bid protests that are pending in the court of claims. And so there's a clear division, certainly under court of claims, federal circuit law, to which the courts are generally supposed to defer. And they have drawn the line and said if you want to challenge the policy, go to district court. You must go to district court, in fact, because we in the claims courts will not challenge the government policy, only how it's implemented on specific procurements. So they're reserving the procurements to themselves. And that's what the Tucker Act does in their view, which we agree with, and we're not seeking to relitigate them. What do we do with... Boeing says that a pure challenge to an executive order, right, a facial challenge, falls within the jurisdiction of the Court of Federal Claims in cases involving Contract Disputes Act. Right, which is not before us, but it's ... But you have a claim about that, right? Under the Contract Disputes Act? Yeah. No, ours is under the Procurement Act, and we have a competition in Contracting Act claim. So there's no question, we have a huge problem . . . The Contract Disputes Act says that all claims, all claims, by a contractor against the government relating to a contract shall be submitted to a contracting officer, and the only forum for judicial review of the contracting officer's decision is the United States Court of Federal Claims. Hence, there's no alternative such as district courts. And I'm sorry, you were quoting . . . I'm quoting from the Federal Circuit's decision in Texas Health Choice versus Office of Personnel Management. Right, which they then backtracked from in the subsequent Boeing decision and distinguished. I think what we can say is this, we are not challenging the specific procurement or proposed procurement. And so that's . . . and thinking of my question, I'm really not trying to conflate the issues, but I'm trying to understand how your position regarding our jurisdiction doesn't therefore undermine your argument as to irreparable harm, if you don't have any pending contracts at issue. Well, but the irreparable harm is the denial of fair and open competition, systemic discrimination in every future contract they're going to be doing. It seemed to me the district court was at least wrong in its analysis of irreparable injury in that it says, well, you can pursue a claim in the Court of Federal Claims about bidding, but the relief you would get there is injunctive or declaratory relief, which is the way you establish no irreparable harm is that you have a legal remedy, not that there's another equitable remedy. It seemed to me that was the problem with the district court's reasoning. Well, plus numerous cases saying that when there is a systemic denial of open competitive bidding, it's not a remedy for irreparable harm to say that, well, you can go protest it one at a time. It's unheard of that we have a situation with this order in place that is now being protested on every project that is happening, thereby causing delay. When I look at the current version of the Tucker Act and look at the Boeing decision and what it says about the Contract Disputes Act and its sweeping language, it sure looks like that the Tucker Act contains similarly broad language in describing its scope. All I can say is what I have said, which is that the Landshark case that they cite, that both of those courts cite on the claims side, dictates and contemplates that these types of cases and injunction requests like ours, not only are permissible, but they must be filed in the district court. When we submit, this court, you have jurisdiction and it is vital that you exercise that jurisdiction to correct a total misjustice that is going on and is going to continue to go on in the future. If the district court was wrong about its finding about . . . Let's say we have jurisdiction. We might want to have supplemental briefing about that. If we have jurisdiction and the district court was wrong in denying relief on the finding of . . . you had not showed irreparable injury. Its analysis was wrong. It didn't address really anything else. Your alternative grounds for relief, it would seem to me the thing to do would be to vacate and remand for the district court to do this over again. As I understand it, everything is teed up in the district court in terms of summary judgment briefing on a lot of issues. Isn't that right? Yes, though some time has gone by. We would say that there's nothing that the district court needs to do on the preliminary injunction. We've been waiting a year and a half or something. No, this is the problem always with appealing decisions, particularly denials of relief of preliminary injunctions. We're not always the fastest place, but we're a court of review, not of first view. It seems to me that the district court was wrong about that. We could say you were wrong about that, but to go and then decide all these issues without the benefit of what the district court says about them seems unwise. Let me suggest to you that the only key things the district court needed to decide was likelihood of success on the merits, which she got right. Clearly, there is a high likelihood of success on the competition and contracting on claims, as well as potentially other claims, but she doesn't need to. Only one is needed in order to grant the preliminary injunction. Then irreparable harm, she got wrong. If you agree with those two things, all that's left is that the threatened injury outweighs potential to the non-moving party. She made a factual finding that the government has, in its course of dealing, applied the executive order beyond its terms, and the government does not appear to have disputed that. Right. At the same time, the final two standards, which are usually conflated, is that the injunction is in the public interest, basically. I can't think of an injunction that would be better serving the public interest than this one because federal procurement is being put into total chaos in the construction industry and has got this ping-pong game going with constant bid protests and uncertainties and risks to the contractors and increased costs to the taxpayers. That finding that I just talked about, though, would not forbid the administration from applying the executive order according to its terms, as opposed to beyond its terms. The terms of the executive order inherently have led to this situation. They are designed . . . That's a different issue. You were talking about, well, the district court's made a finding of likelihood of success on the merits. There's no reason to send it back. If you're asking us to address far more than what the district court said, then we have a different problem. Not asking you to address more than what the district court said. There should be an injunction in the meantime. That's what we're here for. We appreciate you expediting the consideration of the case. We know you're doing the best you can as far as that goes, but I would request that you not . . . We do not think it's necessary to remand. It will cause more delay, unfortunately, which is not necessary here because she's done all that you need. I reserve . . . I just have a quick question. For those who might not be as convinced that the district court was wrong with respect to irreparable harm, the court finds that any harm you argued, and I think, again, in support of your jurisdictional argument, is speculative. It is known that if it's a First Amendment violation, that in and of itself is the harm. In this case, again, there are no current contracts, correct? Well, there are current contracts. They're being litigated in the Court of Federal Claims. In this case? In this case? Not in this case. Not in this case. All right. Many examples have been given to show harm, what they are threatened with, and one can look at . . . There is no reason to think it's going to change unless a court steps in and does its duty, which we're confident and hopeful that you will do. I have reserved three minutes for rebuttal. Whatever's left, I'll take. Okay. Let's hear from the government. Mr. Winnick? Good morning, Your Honor. May it please the Court. Daniel Winnick for the government. I want to speak to the irreparable harm and jurisdictional and the merits issues, at least on the SICA claim, which I think may be distinct from the others in terms of this court's being a court of review because the district court did reach it. And I think, again, it's important to understand that the district court did reach it.   And I think all of those issues really boil down to the same basic point, which is that to the extent there is any violation of SICA stemming from the application of this executive order, it is specific to particular procurements. SICA is not a basis for holding the executive order and the implementing regulations invalid on their face. So to start on the issue of jurisdiction, just because I know it's on the Court's mind, the reason we have briefed the cases we have is that we understand it to be a challenge to the executive order and the regulations on their face. And so given that understanding of the case, the problem with the SICA claim is simply that it fails on the merits because SICA isn't a basis to invalidate the executive order and the implementing regulations on their face. It could be a basis for the as-applied relief that one can get in a bid protest. And on that point, it's worth noting that a number of plaintiff's members, the named members of plaintiff in this case, have brought pending bid protests in the Court of Federal Claims. They're being briefed right now. There's one by Hensel Phelps. There's one by Brasfield and Gorry. There were several others by other members of the plaintiff associations that have been dismissed because the issues have been resolved. So the SICA issues can properly be resolved in those bid protests. SICA would not be a basis to hold the executive order invalid on its face. It doesn't appear that you've disputed the finding by the district court that the government in its course of dealing has applied the executive order beyond its terms. So I'm not sure it's a finding. I mean, there wasn't evidence here or anything like that. I think she based that on the assessment of the MVL court, which was based on the record of the specific solicitations at issue in MVL. I do think facts have changed considerably since the district court issued its ruling. None of this is in the record, but I'm just going to sort of represent the current state of the world. I understand that a number of agencies have been granting exceptions since the OMB clarified in June or July the administration's position on the executive order. I also think it's clear just from the face of the implementing regulations, the regulations say that the FAR Council expected exceptions would apply in 10 to 50 percent of solicitations. That's at page . . . You said 10 to 50? 10 to 50 percent. That's at page 88, 724 of the implementing regulations. So I'm not representing that it has in fact been 10 to 50 percent, but . . . There was no finding about this? I thought the district court said that the record was replete with evidence that the government had consistently declined to utilize the order's exceptions. I think when the court is referring to the record there, what it's talking about is the record in MVL. I mean, there was not a factual record in this case about the extent to which exceptions were or were not being applied. So I think the court was just reading the MVL opinion, and the opinion in MVL is based on the Court of Federal Claims' understanding that in the eight solicitations at issue in that case, the court thought exemptions should have been applied and weren't. So I think that's what the district court here was . . . How many exceptions from the PLA mandate have been granted since the rule took effect, since you just mentioned that? I don't have the exact number, Your Honor. I'm happy if the court would like to try to provide more information in a letter, but I do know that there have been some. And again, I think facts have changed since the clarification in June or July of the administration's  And to clarify my question, I'm not talking about instances in which an agency has removed a PLA requirement after a court found it. Correct. Understood. Yes. And there have been at least some in recent weeks or months. Some on the ground of the urgent need exception and some on the ground of the insufficient price competition exception. So agencies are granting exceptions. Okay. And just to follow up, since you're talking about things have changed, is an agency required to determine if a PLA exception exists? For example, are agencies required to conduct market research to see if requiring a PLA would inhibit full and open competition? My understanding is yes. I mean, whether to have a PLA required in specific solicitation is a solicitation specific determination by the agency. And all that this executive order and the regulations do is create a presumption. You should presume that a PLA is a need for a given project. You should consider whether the exemptions apply. And so I just want to clarify, I guess even for Judge Branch's question, are you saying they are allowed to do that proactively before the request is made or only once the request for the exception is made? My understanding is it's proactive. It's in determining in the course of the bidding process whether to include the term in a solicitation. And that really is essential to our understanding of this case and of what this directive is doing. This is essentially a challenge to the president's authority as the head of the executive branch to direct federal agencies as to what they should consider to be needs when they engage in procurement. Agencies have broad discretion under 41 U.S.C. 3306 for non-military agencies and 10 U.S.C. 3206 for the military to determine what their needs are and to include restrictive provisions or conditions in solicitations to the extent necessary to satisfy those needs. And they have, of course, reviewed those determinations very generously for whether they're rational. And all that the president has done here is direct agencies that they should presumptively consider PLAs to be needs when they solicit bids for a particular type of project, a large. Let me follow up. I'm still on the exceptions. I think I'm right. If an agency determines at least one of the criteria for a PLA exception is met, you're not suggesting that the agency is required to grant an exception. It is, they simply say an agency may, right? I mean, I suppose, although the thrust of the, I frankly don't know how the rule is worded, but everything about this directive is that PLAs are presumptively a need. You should consider when you are bidding on one of these projects. They're probably a need, but you have to look for when one of the exceptions is satisfied. But if an exception is satisfied, is it mandatory the agency grant the exception or they just can consider granting an exception? So, Your Honor, again, I don't quite, I don't remember exactly how the regulations are worded on that point, but I think if you think about what the exceptions are, there's probably not a difference in practice. Because if an agency is finding, take, for example, the exception for whether, for when a PLA would substantially reduce the number of potential bidders so as to frustrate effective price competition. I mean, if an agency looks at this and says, we'd really like to have this project done, we think a PLA is going to reduce the number of bidders to the point that we can't get the project done or can't have effective price competition. I don't think the agency is, you know, going to want to have a PLA requirement in that circumstance. And obviously the reason I'm asking is because both the executive order and the PLA rule simply say an agency may. Yes, but again, I don't think as a practical matter an agency is going to say, well, the exception is satisfied. It's not in our interest to have a PLA requirement, but we're nonetheless going to have one. And I don't dispute that in the early days of the application of this executive order, there may have been misconceptions by agencies. There's been a lot of back and forth about how the executive order was being implemented, including over a change of administrations and some agencies issued, you know, class deviations that OMB later clarified were inappropriate. So there's been a lot of back and forth. I think the state of affairs now is the exceptions are being applied at the implementing regulations, predicted that they would be applied in 10 to 50% of the cases. I don't have exact numbers as to how often they're being applied, but I don't think the court should fear that agencies are, you know, going about and issuing a PLA requirements when they don't think it's in their interest to do so. Does the availability of a bid protest where I take it the relief would be equitable, injunctive or declaratory, does that mean that there can't be irreparable harm in this case? It seems to me that that's not the way the irreparable harm analysis works. You look for the availability of legal relief, not a different form of injunctive relief in another court. I think the irreparable harm analysis is specific to the claim. And we think the irreparable harm issues resolved by the district court are quite closely related to the nature of a CICA claim. So the nature of a CICA claim, as we said, is solicitation specific. You need full and open competition in the course of a particular solicitation. And if you, the claim by its nature should be brought in the Court of Federal Claims, only the Court of Federal Claims has jurisdiction to address its application of a particular solicitation. And so if you think that a bidder can't go and get, you know, belief in a particular solicitation from the Court of Federal Claims, I do think you don't need the sweeping belief they're seeking in this case. So whether that's for jurisdictional reasons, merits reasons or irreparable harm reasons, I think it does. So the MVL court has, its ruling would suggest the Court of Federal Claims doesn't have jurisdiction over this. It seems, at least that's the way I read it. But the problem is, for me at least, the MVL court did not confront the sunset provision in the Administrative Dispute Resolution Act of 1996. It did not consider subsections B2 or B4 of the amended Tucker Act. It did not address the Federal Circuit precedents broadly interpreting the phrase in connection with a procurement or proposed procurement as it appears in B1. You know, there are a lot of reasons to wonder whether the Court of Federal Claims was right in MVL, it seems to me. So I want to be very clear. What the Court of Federal Claims said in MVL was that it could not issue an injunction forbidding on its face the enforcement of this executive order or the implementing regulations. We think that's entirely correct. It does have jurisdiction to consider whether a restrictive condition in a given solicitation violates CICA, which is the only way CICA can properly be applied. So we think the Court of Federal Claims ruling in MVL2, where it said I can't enjoin the enforcement of regulation on its face, was wholly correct. And none of that calls into question that court's jurisdiction to decide whether CICA forbids the inclusion of a PLA requirement in a given solicitation, which is, again, the only way CICA can properly be used. I'm only aware of a single case, the NGS case, where any court has looked at CICA as a basis for considering a policy for procurement to be invalid on its face. And NGS was an extremely unusual case where the policy at issue said even if a given contractor is going to be the best contractor to perform the work that you're bidding in a given solicitation, you can't let them compete. You can't award them the contract. But the district courts, with the district courts finding that there was a violation here was an as-applied violation, wasn't it? I don't think that's true, Your Honor. This is a facial challenge to the . . . I thought the district court said that they're in their course of dealing. They've just gone beyond the terms of the executive order. That sounds as applied to me as opposed to on the face of the order. This is a challenge to the enforcement of the executive order and the regulations on their face. I think what the court was saying in that language was that . . . I don't necessarily doubt that, but the district court's analysis of why it thought there was a violation, although no showing of irreparable harm, seemed to be an as-applied rationale. It may have been an as-applied rationale to the extent it was wholly inappropriate to this case because there has been no application. Again, I think the court was looking at the record in MVL and saying, well, that court thought some of the exceptions were not being applied. If it were an as-applied, then it would be within the jurisdiction of the Court of Federal Claims, wouldn't it? Yes, to the extent the court was talking about how CEQA was being applied or how the PLA requirement was being applied and given solicitations. Yes, correct. There are, of course, other merits issues in this case. We have suggested that the court reach them and decide them. I hear the court's reluctance to do that. I understand that. As the court has noted, the summary judgment motions are fully briefed, so really the only point we've made about the other merits issues is this is all going to have to be resolved by the district court anyway. They've been fully briefed before you, so you might as well provide guidance. Let me ask you a general merits question. I think I know the answer, but I'd love to just confirm. Would you, if we were to find that the executive order is unlawful, say, for example, under the Procurement Act, this is the hypothetical, do you concede that the PLA rule and the OMB guidance are unlawful as well? To the extent the executive order was not within the president's authority under Article 2 or the Procurement Act, I don't think the court has to, the court could sustain it under Article 2 even if it doesn't think the Procurement Act is unlawful. In my hypothetical that we say it is unlawful, it doesn't qualify for protection under Article 2 and it's a violation of the Procurement Act. Yes, if the executive order was invalid, the regulations and the guidance, well, the regulations would also be invalid. The guidance is not really a final agency action, challengeable anyway, but the regulations would be invalid in that circumstance. Yes, and just to touch briefly on the Article 2 issue, I mean, I think the court can sidestep entirely the procurement issues in this case because this is exactly the sort of executive order the president can properly issue in his inherent authority under Article 2, exactly as the D.C. Circuit held of a prior PLA executive order in Allbaugh because, and this is an important point, plaintiffs have not disputed that agencies can properly determine on their own that they are going to consider a PLA requirement to be a need for a given solicitation. All the president has done in this directive is say that agencies should presumptively exercise their discretion by considering a PLA to be a need. It's exactly the sort of thing that the president in his capacity as the head, the manager of the executive branch can instruct agencies to do. This case just doesn't present the broader issues about the Procurement Act. Those issues are raised properly before the court in cases where a president has issued a directive that is understood to give agencies some power that they might not otherwise have on their own. Here, there's no question agencies could decide on their own that a PLA is a need. Plaintiffs haven't disputed that. I just wanted to clarify. I'm looking at the language because it sounds like you're inserting a lot of agency discretion, which the language of the EO doesn't seem to suggest. So I guess where are you pointing to? What language are you relying on to say that discretion you just described? The discretion I just described is under 41 U.S.C. 3306 A1A with a parallel provision for the military that just says agencies determine their needs. Agencies have discretion to determine their needs, what they need in a given procurement. My friend has not disputed that agencies could properly say, even if this directive didn't exist, agencies could properly say, we think a PLA is a need for this construction project because we think it's going to help us do it economically and efficiently. So all the executive order is doing here is telling agencies, when you exercise that discretion, you should presumptively consider a PLA to be need unless you find that one of the exceptions from this directive is satisfied. That's why it's within the Article II authority, even aside from the procurement act. Thank you, Ron. Thank you, Mr. Baskin. Thank you. Let me first respond to the exceptions question. The reason the government could not answer is because the government has failed to publish any record of these exemptions. It just went on the website the other day. No exceptions are recorded there, as they're supposed to be. The only record evidence, which the district court properly summarized, is that the PLA rule applies across a wide swath of government contracts, has few exceptions, and any exceptions are at best infrequently used and infrequently as approaching zero. And that is because the discretion of the agencies is totally interfered with by the executive order itself. And I commend everybody to just go back and read it, particularly in Section 5. At every step, they make it difficult, if not impossible, for it to happen, starting with requiring a senior official within the agency may grant the exception. To get to the senior official, some rank-and-file procurement official has to have the guts to go forward, also has to put the whole thing in writing, which no one really particularly wants to do, and then limits these particular exceptions in such ways that, well, they just haven't been used, except when they're ordered to by the Court of Federal Claims. And so that's the horrible situation that we're in right now, and have been in over the past year. Something that really needs to come to an end. By the way, the quote that I gave from the judge's decision did not come from MVL. This was the judge's summary of what's . . . Can you address the point I was making in that this is a facial challenge to the order, right? Yes, but it's a facial challenge, but you can use events as applied to determine . . . But the district court's finding is really an as-applied finding, isn't it? That the administration is not using the exception. It's used in order to determine what is the facial meaning of the executive order. There's such thing as a hybrid, as-applied and or facial challenge, and I believe very much that these examples that are given shows what the real world means and understands this executive order to mean in the government that is trying to enforce it. It's really . . . As-applied, and I think it sounds like you concede, wouldn't be appropriate because you don't have a current bid or a pending bid, right? Well, no. It's appropriate to determine what the executive order itself means, and how far does it go, and how unworkable is it? Right now, the jury is in. Let's see how you say . . . Mr. Judge said it's unworkable. I don't know how you say you're determining what it means when you say they're not doing what it means. They're not applying exceptions that we understand on the face of it. But the reason . . . That's not determining what it means. But the reason that they are doing it that way is because that's what the executive order virtually requires them to do, and they're going in the direction of least resistance within the federal bureaucracy, and that's what's been going on. All the time saying to our folks who've been inquiring about this, we don't like this any more than you do, but we think we have to do it, and we can't do it any other way. Okay. So, we appreciate your time, and we . . . Thank you, Mr. Baskin. We have it, and we're going to be adjourned for the week.